William D. Hyslop
United States Attorney
Eastern District of Washington
Thomas J. Hanlon
Alison L. Gregoire
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone:  (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

                Plaintiff,

       v.

LORENZO ELIAS MENDEZ,

                Defendant.

No. 1:18-CR-02037-SMJ-1

Sentencing Memorandum

Plaintiff, United States of America, by and through William D. Hyslop, United States Attorney for the Eastern District of Washington, and Thomas J. Hanlon and Alison L. Gregoire, Assistant United States Attorneys for the Eastern District of Washington, submits the following sentencing memorandum:

## I.      STATEMENT OF FACTS

Defendant was convicted after of a jury trial, at which he testified, of attempted production of child pornography.

Defendant placed a Wi-Fi camera—a pin camera—in the eye of a stuffed animal in the bedroom of his girlfriend's 14-year-old daughter, and filmed her surreptitiously.  Through that Wi-Fi camera he was able to view video of the 14-year-old child as she undressed and engaged in other bedroom behavior, to include

United States Sentencing Memorandum - 1

masturbation.

Francis Hernandez, the mother of the victim, had been living with Defendant for about three years at the time the recordings (that the government was able to locate artifacts of) were produced.  The recordings came to light when Francis and Defendant took a trip to Las Vegas and went on to visit Defendant's father, who lived nearby.  On the ride there the two got into a minor argument because Defendant did not want Francis on his phone.

When they got to Defendant's dad's house, Defendant took a nap, but Francis did not.  She decided to see what was in Defendant's phone, figuring it was about the woman he was having an affair with.  She opened the phone and all of the social media applications had been deleted, so she went to the pictures.  In videos she saw what looked like a woman in bed naked.  She played a portion of the video, but it was dark so she moved to a different lighter one.  As she was watching the second video, the girl in the picture turned her head and Francis realized it was her daughter, E.H.  Francis played more videos which depicted her daughter taking her panties off and masturbating.  Francis retrieved her own iPhone and made a short recording of what she was seeing on Defendant's phone.

Defendant awoke to Francis upset, but she indicated she did not feel well. Francis called her friend (her brother's ex-girlfriend) and asked her to go to the house Francis shared with Defendant and see if there was a "hidden camera" in E.H.'s room.

The friend agreed and went to the home later that day to look for the camera. She could not locate anything and then, just when she was going to leave the room, she noticed a stuffed animal with an eye that did not look right, in that it did not look like the other eye on the animal.  She pulled at the eye and saw a camera lens just behind it.  She took the camera from inside the stuffed animal and some other cords Francis had told her she was now concerned about and left.  Ultimately, she

United States Sentencing Memorandum - 2

provided the things taken to the Moxee Police.

When Francis and Defendant commenced their trip home, Francis called 911 from Seattle.  She told the operator about the photos of her daughter she had seen on Defendant's phone.  It was ultimately agreed Francis should go to the Moxee Police station upon her return.

Francis and Defendant then went back to their house in Moxee.  Defendant went upstairs while Francis sat on the couch.  Defendant came down to say he was going to get his kids.  Francis used the opportunity to go to the police.  At approximately 2000 hours she told the police what happened and showed them the video she took, which they download from her iPhone to a Moxee Police Department laptop.

Just hours later, early the next morning the Moxee Police executed a search warrant at Defendant's home. Sgt. Lewis from the Moxee Police was the officer in charge who applied for and obtained the warrant and he seized and logged the evidence.  During the search warrant, Defendant's phone was seized from his nightstand.  Many Wi-Fi cameras or spy cameras were located in Defendant's belongings.  Such cameras were located among his personal items in the closet, in his personal vehicle, and in his patrol vehicle.  One such camera was still in the mailing envelope to Lorenzo Mendez. The FBI subpoenaed the records associated with the sale of the cameras.  The cameras were largely purchased through Defendant's eBay account using PayPal.  In fact, Defendant purchased four cameras listed as "hidden" or "spy" cameras using the account just between July 21, 2017 and April 26, 2018.  Defendant's PayPal account showed the associated credit cards, used to fund the purchases, were his.

Items seized were ultimately taken to the FBI computer forensic expert (FE) Cory Pritchard.  FE Pritchard performed a Cellebrite examination on Defendant's phone.  He reviewed the video Francis Hernandez had made of what she had seen

on the phone as well.  He saw the videos were stored in a specific directory, "Storage/emulated/0/DCIM/CAM/HBWY-0022553-CFMPE/video."  FE Pritchard was able to locate the directory and found the directory was empty.  The videos in question had been deleted between the time Francis had produced the recording of what she was seeing and the time police had seized the phone.

Both FE Pritchard and Francis testified about the video Francis had made. Both explained, though in different terms, that Francis was recording videos maintained in the native photo gallery on the Android device.  FE Pritchard explained how the gallery had both the contraband images Francis had made a recording of and the non-contraband images associated with things like Defendant's workouts and his children.  The non-contraband images were intermixed with the contraband images.

The contraband videos had been deleted by the time the phone was seized by law enforcement, but FE Pritchard found literally hundreds of thumbnails or reduced size versions of pictures and videos that are used as placeholders in the directory of an operating system or an application for full sized multimedia content.  The thumbnail images depicted E.H., in her room, in her bed or changing clothes. Of note, FE Pritchard did not locate any thumbnails of Defendant's daughter who shared the room with E.H. when she stayed at the house.  FE Pritchard testified a trial about how a smart phone will create and store these automatically, and deleting the videos does not delete the thumbnails.  Further, he explained some applications generate their own thumbnails and that there was video editing software (Aviary) on Defendant's phone as was producing thumbnails as well as a player (VLC) that was producing thumbnails, when the images were accessed in those programs.

FE Pritchard also testified about the "applications" section of Defendant's phone and how Defendant had any number of applications that pertained to Wi-Fi

United States Sentencing Memorandum - 4

cameras to include Wifi DVR W, BVCAM, HDMiniCam, HHMiniCam, iMiniCam, P2P livecam, and Plug2View. FE Pritchard explained these cameras broadcast to specific Wi-Fi networks, and in this case, Defendant's saved Wi-Fi networks included four that were specific to spy cameras located during the search of his residence and vehicles.

Defendant testified at trial incredibly (as determined through the jury verdict), that he had been framed by Francis Hernandez, as she had access to his phone. Defendant testified, consistent with the eBay and PayPal records, he did purchase Wi-Fi cameras, but he purchased them for work, plugging one such camera into the auxiliary unit in the center console of his police vehicle.

Defendant did not have any images or even thumbnails pertaining to police work. He indicated the cameras did not work, but he continued to order them. He would just set them aside and order more, since they were inexpensive anyway.

Defendant testified he started living with Francis in 2015, and he purchased a house using a VA home loan, which Francis and her children moved into. When his daughter was visiting she would stay in the room with E.H.

Defendant indicated he did not place any cameras in the house. There was a surveillance camera, but it covered only the driveway. His phone contained software/applications for multiple spy cameras. The correlating spy cameras were found in his belongings and he admitted, he purchased them, using his credit card. His phone connected to the Wi-Fi networks to enable those spy cameras. His phone found to have thumbnails from at least three different applications from hundreds of surreptitiously taken videos of E.H. The videos, which Francis recorded, were deleted between the time Francis recorded them in the photo gallery of Defendant's phone and approximately a day later when Defendant was arrested. Defendant maintained he was not responsible for the videos of E.H. throughout his testimony at trial.

United States Sentencing Memorandum - 5

## II.    PSIR OBJECTIONS AND SENTENCING CALCULATIONS

The government agrees with United States Probation that Defendant's Total Offense Level is 41, his Criminal History Category is I, and the resulting guideline range is 324-360 months.  The government has no objections to the PSIR.

## III.    SENTENCING FACTORS UNDER 18 U.S.C. §3553(a)

In determining the appropriate sentence, this Court should consider the factors as set forth in 18 U.S.C. § 3553(a).

1. <u>The nature and circumstances of the offense and the history and characteristics of Defendant.</u>

The circumstances of the offense involve Defendant's repeatedly, willfully using a child, to whom he had access, to produce child pornography.  ECF No. 227 at ¶¶ 16-39.  Defendant was in a position of trust reference to the victim in this case, with whom he lived.  ECF No. 227 at ¶ 48.  Thus, the characteristics of Defendant include his willingness to abuse a position of trust.

Defendant's history includes repeated production and attempted production of child pornography.  Though he has no previous criminal convictions for sexual abuse, Defendant had a history of purchasing spy cameras, as detailed by the eBay and PayPal records.  Further, he had been using those cameras for the purpose of producing surreptitious recordings of E.H. for *at least* six months, per the government's recovery of thumbnails.[1]

---

[1] The government indicates at least six months, because Defendant indicated during his testimony that he had switched cellular phones.  Thus, there may well have been abuse captured on a device the government did not recover, which would have been consistent with some of the earlier purchase dates of the spy cameras.

United States Sentencing Memorandum - 6

2. <u>The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment.</u>

The government asks the Court sentence Defendant to imprisonment for twenty-eight years or 336 months.  The government asks that the Court also order a lifetime of supervised release.  Such a significant sentence is necessary to reflect the seriousness of the offense, promote respect for the law and provide just punishment.

Defendant was a police officer at the time of the offense in question.  He had every reason to be fully cognizant of the wrongfulness of what he was doing and the likely impact on the victim upon learning she had been filmed when she thought she was alone in her room.  Despite being a former law enforcement officer, Defendant has demonstrated a complete lack of respect for the law.

The gravity of Defendant's crime against a child, particularly given the abuse of trust that permitted Defendant to access to the victim in this case, is serious to say the least.  In looking to just punishment, the government asks the Court to consider the impact on the 14-year old victim who had to learn of what had happened to her in her own room, had move houses shortly thereafter, had to listen as the defense proffered her own mother produced the images of her, had to review the images that were produced of her to identify them, and had to testify at trial.  Because of Defendant's actions, E.H. has endured more than any child should have to.

Defendant testified about and E.H. was questioned about a discussion between the two of them where Defendant told E.H. they were family—he was her family.  The betrayal of trust that accompanies filming a minor aged "family" member in this way is horrific enough.  However, the betrayal was only intensified when Defendant chose to argue the child's mother had produced the images (on his phone, using equipment he purchased with his credit card, over a period of six

United States Sentencing Memorandum - 7

months, intermixed with his other photos).  There is one person at fault for these actions.  There is one person who is guilty, and that person is Defendant.

3.  <u>The need for the sentence imposed to afford adequate deterrence to criminal conduct.</u>

Defendant's offense against the victim was not a discrete act or a momentary lapse in judgment.  The abuse required extensive work to carry out. SA McEuen testified at trial as to the components of the eye of the stuffed animal and other materials used and FE Pritchard testified as to the applications and software Defendant needed to utilize for his offense.  Further, the offense extended for a considerable amount of time.  Adequate deterrence will be a significant task.  The government believes a significant sentence to imprisonment will be necessary to deter Defendant.

The government recommends a lifetime of supervised release.  The government is concerned by the recidivism rate for sex offenders generally.  *See* Dept. of Justice, Bureau of Justice Statistics, P. Langan, E. Schmitt, & M. Durose, *Recidivism of Sex Offenders Released in 1994*, p. 1 (Nov. 2003) (reporting that compared to non-sex offenders, released sex offenders were four times more likely to be rearrested for a sex crime, and that within the first three years following release 5.3% of released sex offenders were rearrested for a sex crime); *Smith v. Doe,* 538 U.S. 84, 104 (2003) ("The risk of recidivism posed by sex offenders is 'frightening and high.'") (quoting  *McKune v. Lile*, 536 U.S. 24, 34 (2002)).  Additionally, Defendant committed his offenses on a victim who was particularly vulnerable, given her relationship with and living situation with the Defendant, as has been detailed herein.

The government is confident the recommended twenty-eight year term of imprisonment followed by supervised release for life will accomplish adequate deterrence.

United States Sentencing Memorandum - 8

4. <u>The need for the sentence imposed to protect the public from further crimes of Defendant.</u>

Defendant poses a danger to the public. Given Defendant's demonstrated willingness to pursue a victim in a vulnerable state, in his home, who was his "family," while he was serving as a police officer, the government argues he should be under the supervision of a United States Probation Officer for the rest of his life. Additionally, the public, particularly children, require protection from Defendant and the United States believes the requested twenty-eight year sentence is appropriate.

5. <u>The need for the sentence imposed to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.</u>

Defendant has not identified any needed educational or vocational training.

6. <u>The kinds of sentences available.</u>

Defendant is subject to a sentence involving a term of imprisonment. The offense to which Defendant pled guilty carries a mandatory minimum sentence of fifteen years imprisonment.

7. <u>The kind of sentence contemplated by the Sentencing Guidelines.</u>

The Sentencing Guidelines contemplates a term of imprisonment.

8. <u>Any pertinent policy statements issued by the Sentencing Commission.</u>

There are no pertinent policy statements in this case.

9. <u>The need to avoid unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct.</u>

The government's recommended sentence is mid-guideline. Defendant is subject to a sentence similar to others similarly situated.

IV.    RESTITUTION, FINES, ASSESSMENTS, AND FORFEITURES

The Court should impose mandatory restitution, a maximum statutory and

guidelines fine, the mandatory $5,000 special assessment in accordance with the Justice for Victims of Trafficking Act 2015 ("JVTA") (18 U.S.C. § 3014(a)), and enter a final order of forfeiture as to the property identified in the jury verdict form.

A.    Restitution

Restitution is mandatory pursuant to 18 U.S.C. §§ 2259 and 3663A. The Court should order that Defendant pay restitution in the full amount sought by E.H., as well as by her mother, Francis Hernandez. *See* 18 U.S.C. 2259(c) ("For purposes of this section, the term 'victim'" means the individual harmed as a result of a commission of a crime under this chapter, including, in the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, but in no event shall the defendant be named as such representative or guardian.").

Pursuant to 18 U.S.C. § 3664(f)(2), (3), the Court must specify the manner in which payment of the restitution is made based on the Defendant's assets and obligations and may order the Defendant to make a single, lump-sum payment immediately upon sentencing.

B.    Fines

The government is not seeking a fine.

C.    JVTA Assessment

Pursuant to 18 U.S.C. § 3014(a)(3), the Court shall impose a $5,000 JVTA assessment against the Defendant for his conviction for an offense under Chapter 110. The only exception to the JVTA assessment is indigence, which does not apply to the Defendant who had retained counsel in the instant matter and has substantial future earning potential. *See United States v. Kelley*, 480 F.3d 1205 (8th Cir. 2017) (ordering payment of the $5,000 JVTA assessment on a presently indigent defendant who was an "Eagle Scout with a college degree" with the potential in the future to

United States Sentencing Memorandum - 10

1
2
3
4
5
6
7

be "employed and to earn the money from which he could pay the assessment."); *United States v. Shepherd,* -- F.3d --, No. 18-3993, 2019 WL 1925640, at *3 (6th Cir. May 1, 2019) (noting Section 3014 does not define the term "indigent," the Court indicated in deciding whether the assessment applied it would consider future earnings, holding the court must determine, "(1) Is the defendant impoverished now; and (2) if so, does the defendant have the means to provide for himself so that he will not always be impoverished?").

8
9

Section 3014(b) provides that the JVTA assessment shall not be payable by the Defendant until he has satisfied all outstanding fines and orders of restitution.

10

### V.    GOVERNMENT'S SENTENCING RECOMMENDATION

11
12
13

The government recommends the court impose a sentence to twenty-eight years imprisonment as well as a lifetime term of supervised release.  The government also recommends the court restitution to the victims.

14
15

Respectfully submitted this 16th day of December, 2019.

16
17

William D. Hyslop
United States Attorney

18
19
20

*s/ Alison L. Gregoire*
Alison L. Gregoire
Assistant United States Attorney

21
22
23

*s/ Thomas J. Hanlon*
Thomas J. Hanlon
Assistant United States Attorney

24
25
26
27
28

### CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2019 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Kenneth D. Therrien, 413 North Second Street Yakima, WA 98901

> _s/Alison L. Gregoire_
> Alison L. Gregoire
> Assistant United States Attorney
> United States Attorney's Office
> 920 W. Riverside Suite 300
> Spokane, WA 99210
> (509) 353-2767

United States Sentencing Memorandum - 12