**KEN THERRIEN**
Attorney at Law
413 NORTH SECOND STREET
Yakima, WA 98901
(509) 457-5991
kentherrien@msn.com


Attorney for Defendant:
**LORENZO ELIAS MENDEZ**


## EASTERN DISTRICT OF WASHINGTON
## IN THE UNITED STATES DISTRICT COURT
### (Honorable Salvador Mendoza Jr.)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>        vs.<br><br>LORENZO ELIAS MENDEZ,<br><br>                              Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

NO.   18-CR-2037-SMJ

SENTENCING MEMORANDUM

TO:           WILLIAM D. HYSLOP, United States Attorney
AND TO:    THOMAS J. HANLON, Assistant United States Attorney;
AND TO:    ALISON L. GREGOIRE, Assistant United States Attorney;
AND TO:    CARRIE VALENCIA, United States Probation Officer

## **Introduction**

Lorenzo Elias Mendez, by and through his attorney of record, Ken Therrien hereby submits this sentencing memorandum in preparation for his sentencing hearing scheduled for January 7, 2020 at 9:30 a.m. in Yakima, Washington. At the

SENTENCING MEMORANDUM - 1

time of his sentencing Lorenzo Elias Mendez respectfully request that the Court recommend that he be allowed to serve the sentence imposed by this Court at the Federal Correctional Facility located in Coleman II, Florida. The defendant respectfully requests leave to supplement this sentencing along with additional information prior to the sentencing hearing. In support of arguments set forth in this sentencing memorandum, Lorenzo Mendez submits the Mitigation Report prepared of Tiffany Cunningham of Pinnacle Mitigation, which is incorporated by reference s part of this sentencing memorandum.

## I. Base Offense Level & Enhancements

## Objections to the PSIR Guideline Calculations

**Objection page 9 paragraph 46 PSIR**:

 Lorenzo Mendez objects to the calculation of the base offense level at 32. The basis for the objection is addressed in Lorenzo Mendez' sentencing memorandum at pages 12 - 14.

**Objection page 9 paragraph 48 PSIR:**

Lorenzo Mendez objects to the two-level increase to his offense level pursuant to USSG § 2G2.1(b)(5). In the application notes of subsection (b)(5) advises "In determining whether to apply this adjustment, the court should look to the actual relationship that existed between the defendant and the minor and not the simply to the legal status of the defendant minor relationship. At trial from E.H. herself testified there was not a relationship of any kind between her and Lorenzo Mendez. E.H. told the police when they interviewed her and testified at trial that she told

SENTENCING MEMORANDUM - 2

**KEN THERRIEN, PLLC**
413 North Second Street
Yakima, WA 98901
(509) 457-5991

Lorenzo Mendez early on in his relationship with E.H. mother that they were not family and she hated him. There in fact was no relationship between Lorenzo Mendez and E.H. The only reason that E.H. stayed at the Moxee residence "part time" because of her mother's insistence. Lorenzo Mendez testified that near the end of 2017 he was in a relationship with another woman and was trying to get both E.H. and her mother out of the house.

**Objection page 9 paragraph 53 PSIR**

Lorenzo Mendez objects to the 5-level increase to his offense level based on USSG § 4B1.5(b)(1). In support of this objection Lorenzo Mendez cites U.S. v. Corp 668 F.3d 379 (6th Cir. 2012). In Corps the Court must find by preponderance of the evidence that Lorenzo Mendez engaged in a pattern of activity involving prohibited sexual conduct. The jury convicted Lorenzo Mendez of attempted production of child pornography, However the facts in Lorenzo Mendez case do not support that he committed with sexual intent. There is no evidence nor was one presented that Lorenzo Mendez had conducted grooming technique or in engaged in any sexual behavior toward E.H. in any way. In fact, the two disliked each other. Also, no other evidence that Lorenzo Mendez was inappropriate with any other minor presented or exists. To label him as a "repeat and dangerous sex offender against minors based is a rigid and unwarranted interpretation of the guidelines. There is no pattern of abuse. To be a pattern of abuse the perpetrator would have to know his abusive act would yield the result intended. The person accessing child pornography knows he is doing that. The perpetrator who schedules to meet what they think is an underage minor knows that he is doing that. There is no evidence that was presented that Lorenzo Mendez knew E.H. bedroom habits and the introduction of a surveillance camera would yield such desired results.

**KEN THERRIEN, PLLC**
413 North Second Street
Yakima, WA 98901
(509) 457-5991

Offense Level Computations based on objections would be no more than base offense level of 34 with a 155-188 months.

## II. **Departures**

Mr. Mendez makes this request for a Downward Departure of 4 level offense levels pursuant to U.S.S.G. § 5K2.13 as a result of the Post Traumatic Stress Disorder suffered by Lorenzo Mendez from years of severe physical and emotional abuse suffered as a child by his father and the effects of the PSTD experienced by Lorenzo Mendez as a tribal police officer for 9 years with the Yakama Nation. If the Court determines that Lorenzo Mendez is not entitled to the requested departure, Lorenzo Mendez requests that the Court consider a downward variance under U.S, Booker

## III. **18 U.S.C. 3553 Sentencing Factors**

18 § USC 3553 sets out factors to be considered by the Court when determining what sentence would be sufficient, but not greater than necessary, to comply with the purposes of the statute.  While no one factor is necessarily more determinative than the other, 18 § USC 3553 provides a sequential list of factors to assist the sentencing Court in its analysis.

The District Court may not presume that the guideline range is reasonable, nor should the guideline factors be given any more or less weight than any other. **United States v. Carty**, 520 F.3d 984, 991 (9th Cir. 2008) en banc, citing **Rita**[1],

---

[1] Rita v. United States, 127 S.Ct. 2456 (2007)

SENTENCING MEMORANDUM - 4

**KEN THERRIEN, PLLC**
413 North Second Street
Yakima, WA 98901
(509) 457-5991

**Gall**[2], and **Kimbrough**[3].  The guidelines are but one factor to be taken into account in arriving at an appropriate sentence.  **Id**.

The Nature and Circumstances of the Offense

On June 16, 2018, Lorenzo Mendez was indicted on charges of Attempted Production of Child Pornography U.S.C. § 2251 (a), (e). On May 21, 2019, a Superseding Indictment was filed, ECF 101. On August 15, 2019, trial concluded on the indictment filed on Lorenzo Mendez case. On August 16, 2019, the case went to the jury and on August 16, 2019, at 6:58 p.m. the jury returned a verdict of guilty as to the charge set forth in the indictment.

During the trial, the Government alleged that from January 2018 to June 2018, Lorenzo Mendez surreptitiously recorded E.H., 14 years old at the time, when she stayed at Lorenzo Mendez's residence. E.H.'s mother, F.H., testified she had located video of E.H. on Lorenzo Mendez's cell phone during a visit with Lorenzo Mendez at his father's house in Bullhead City, Arizona.

F.H. waited until the couple had returned to the Sea-Tac Airport to contact police and when Lorenzo Mendez returned to his residence, he was arrested. Search warrants were issued for his house and vehicles. Located was surveillance cameras and a stuffed animal with a surveillance camera located in one of the eyes. The Government presented testimony from an expert in Computer Forensics to testify that the surveillance camera located in the eye of the stuffed animal created the video and images located on Mr. Mendez's phone. A total of 599 images of EH were located on Mr. Mendez's phone.

---

[2] Gall v. United States, 127 S.Ct. 2833 (2007)

[3] Kimbrough v. United States, 128 S.Ct. 558 (2007)

SENTENCING MEMORANDUM - 5

**KEN THERRIEN, PLLC**
413 North Second Street
Yakima, WA 98901
(509) 457-5991

Mr. Mendez presented forensic expert testimony evidence challenging the Government's expert testimony. Lorenzo Mendez testified and called civilian witnesses and did testify at trial denying the charges. Mr. Mendez theory was that E.H.'s mother had set him up and downloaded those images on his phone without his knowledge. During the trial, no evidence was presented that Lorenzo Mendez groomed or made any sexual advances to E.H. No evidence was presented that child pornography was found on any of the computers seized from Mr. Mendez's residence or any property he had in his possession.

History and Characteristics of the Defendant

At the time of his arrest in June of 2018, Lorenzo Mendez had been a Yakama Tribal Police Officer for over nine years. Lorenzo Mendez is also a father of two children from his marriage to Anabel Garza. As a police officer, Lorenzo Mendez saved lives, encountered people at their worst and on more than one occasion, faced life and death situations.

Prior to being a police officer, Lorenzo Mendez had encounters with drug users, violent individuals, people acting at their worst. Lorenzo Mendez did not have to watch television to experience this behavior. Lorenzo did not have to walk through crime ridden neighborhoods to encounter drug abuse and violence. All Lorenzo Mendez had to do was wake up in the morning and get out of bed to greet his father. As identified in Ms. Cunningham's mitigation report, Lorenzo Mendez at a very early age was in a constant fight, flight, or freeze mode. Lorenzo grew up with the understanding that minor transgressions whether real or imaginary were punished. Punishment was swift always physical and mainly brutal.

As an example, Lorenzo recalls walking into the kitchen and observing his father sitting at the kitchen table in a suicidal rage cutting his arms and wrists.

SENTENCING MEMORANDUM - 6

**KEN THERRIEN, PLLC**
413 North Second Street
Yakima, WA 98901
(509) 457-5991

Lorenzo watched as his father used the knife to slice open his own stomach. Lorenzo reports that he blanked out when he saw this. Lorenzo Mendez childhood is filled with episodes father's abusive/drug induced behavior.

It is a testament to Lorenzo Mendez that character considering the dysfunctional upbringing he received, he did not perpetrate a life of emotional and physical abuse on to his children. Lorenzo Mendez was married for 14 years with Anabel and it was a long-established relationship. Lorenzo Mendez's children love and respect him. His ex-wife is supportive of him.

Lorenzo Mendez came from a horrendous background, filled with physical and emotional abuse. Through all that he worked while in high school. He served the Army National Guard and after 8 years of service, was honorably discharged. He used his veteran benefits to put himself through college obtaining a bachelor's degree from Central Washington University in Law and Justice.

After all that has happened to him, extreme physical abuse and emotional abuse from an abusive/drug impaired father, a mother who abandoned him to whatever fate had in store for him. The loss of his sister, Vanessa to cancer at a young age, greatly affected him. Vanessa had been the one who was there for him during this difficult time period who shared the abuse by his father.

Good thing happened for Lorenzo as well. Lorenzo Mendez found Anabel, a woman who loved him for all his faults, children who adored him and who he loved with every ounce of his being. Lorenzo Mendez had it all. Lorenzo Mendez, left this for a woman who manipulated and used him. Her daughter hated and resented him.

Because of the post-traumatic stress disorder, he was suffering from his job and childhood abuse, it prevented Lorenzo from appreciating what he had. As Ms. Cunningham explains in her mitigation report, the combination of a corruptive

SENTENCING MEMORANDUM - 7                    **KEN THERRIEN, PLLC**
                                            413 North Second Street
                                            Yakima, WA 98901
                                            (509) 457-5991

environment and suffering from post-traumatic stress disorder, at a very young age and with his job prevented Lorenzo Mendez from "pumping the breaks on his behavior."

Seriousness of the Offense, Respect for the Law, and providing a Just Punishment

Lorenzo Mendez respectfully submits that a 180-month sentence, followed by five years of supervised release is a sufficient but not greater than necessary sentence, which reflects the seriousness of the offense; promotes respect for the law and provides a just punishment for the crimes he has pled guilty to.

Lorenzo Mendez, prior to being charged with this crime, had no prior criminal history. Lorenzo Mendez has been on pretrial release since the commencement of this case in Federal Court and has complied with all conditions of release imposed upon him.

This Court need not sentence Lorenzo Mendez to any more than 180 months to satisfy this sentencing factor. See, e.g., **United States v. Baker**, 445 F.3d 987, 990, 992 (7thCir. 2006) (affirming non-guideline sentence that was justified, in part, by the fact that prison would "have a greater impact" on someone with no "previous experience being incarcerated"); **United States v. Qualls**, 373 F.Supp. 2d 873, 877 (E.D. Wis. 2005) ("Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served previous time yet continues to re-offend.").

Afford an Adequate Deterrence to Criminal Conduct

The need for deterrence supports no more than the imposition of the mandatory minimum sentence of 180 months. Empirical evidence supports the

SENTENCING MEMORANDUM - 8

**KEN THERRIEN, PLLC**
413 North Second Street
Yakima, WA 98901
(509) 457-5991

assertion that there is no direct relationship between sentence length and deterrence regardless of the type of crime. See Andrew Von Hirsch ET AL., Criminal Deterrence and Sentence Severity: An Analysis of Recent Research (1999) (Concluding that "correlations between sentence severity and crime rates…were not sufficient to have statistical significance and that the studies reviewed do not provide a bases for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects").

There is no evidence to support the conclusion that the lengthy imprisonment of child-pornography possessors has any general deterrent or preventative effect on the production or dissemination of child pornography. See, e.g., **United State v. Beiermann**, 599 F. Supp. 2d 1087, 103-04 (N.D. Iowa 2009) ("[W]e cannot sentence Internet users and sharers of child pornography fast enough or long enough to make a dent in the availability of such material on the Internet," and while deterrence is a "laudable" goal, it "is not being achieved according to any empirical or other evidence in this case or, for that matter, empirical evidence in any other case or source that I am aware of."); **United States v. Stern**, 590 F. Supp. 2d 945, 952 n. (N.D. Ohio 2008) ("The Court is …forced to note the somewhat limited impact of domestic prosecution for a fundamentally international crime…[N]o court should be deluded into believing that limiting domestic consumption alone can eradicate the international market for child pornography."); **United State v. Raby**, No. 2:05-cr-00003, 2009 WL 5173964, at **6-7 (S.D. W. Va. Dec. 30, 2009) (unpublished) ("The worldwide make for child pornography is so vast that the relative market impact of [] having even 592 additional images is minuscule.

Lorenzo Mendez will upon his release be labeled a sex-offender, be subject to sex-offender registration requirement, prohibitions on where he can go in public

SENTENCING MEMORANDUM - 9

and who he can and cannot associate with.  On his release from custody, another component of Lorenzo Mendez' sentence will begin.  The collateral consequences to a conviction of this type cannot be understated.  Lorenzo Mendez' history and characteristics and the need for deterrence support the imposition of a 180-month sentence.

Protect the Public from Further Crimes of the Defendant

Lorenzo Mendez is not a violent person. Lorenzo Mendez, prior to being charged with and convicted of this crime, had no criminal history. Lorenzo Mendez was a Yakama Tribal Law Enforcement Officer for nine years.  Honorably discharged from the Military. A graduate from Central Washington University with a degree a in Law and Justice.

This factor will be satisfied by the imposition of the 180-month sentence, the five years of supervised release with the conditions of supervision imposed in the pre-sentence investigation report.

As a former Police Officer and a Convicted Sex Offender Lorenzo Mendez Would be Subject to Abuse from Other Prisoners while Incarcerated

Lorenzo Mendez requests this court grant him a variance of 2 levels to his guideline range because he is a former police officer and in addition to being convicted of attempted production of child pornography. Courts have recognized basis for granting downward departures based on the defendants' vulnerability. Koon v. U.S. 518 U.S. 81 (1996) No abuse of discretion to grant downward departure for police officers convicted of civil rights violation US v. Slages 16-CR-00378-DCN U.S. District Court South Carolina. Defendant was a police officer who shot an unarmed suspect while fleeing from him citing U.S. v. Volpe 78 F.

SENTENCING MEMORANDUM - 10

**KEN THERRIEN, PLLC**
413 North Second Street
Yakima, WA 98901
(509) 457-5991

Supp 76, 84 (E.D. N.Y. 1999) (Court granted two level reduction in guideline range).

18 USC §3553 (a) (1) (D) addresses a very important factor in Lorenzo Mendez punishment and rehabilitation. See **U.S. v Lara**, 905 F.2d 599 (2nd Cir. 1990):((departure affirmed for defendant who had "feminine cast to his face" and "softness of features" which would make him prey to prisoners;) **U.S. v. Parish**, 308 F.3d 1025 (9th Cir. 2002) (eight level departure granted in child porn case in part because defendant has "high susceptibility to abuse in prison" due to his demeanor, his naiveté, and the nature of the offense).

## V. <u>The Guideline Range in this Case is Excessive and a Downward Variance Is Warranted Based on Policy Disagreements with the Guideline.</u>

A 180-month sentence is also appropriate in light of both the flaws in the child-pornography Guideline and Lorenzo Mendez actual conduct.

Lorenzo Mendez receives numerous, dramatic increases to his base offense level under U.S. Sentencing Guideline § 2G2.2 that serve no specific sentencing purpose and that are wholly divorced from Lorenzo Mendez moral culpability such that they adequately reflect 18 U.S.C. § 3553(a).

## VI. <u>Criticisms of the Child-Pornography Guideline</u>

Although the Court is obligated to calculate the Guideline range correctly prior to the imposition of sentence, **Gall v. United States**, 552 U.S. 38, 49 (2007), it may not treat that range as mandatory or presumptively reasonable, *id.* at 51. Rather, the Guideline as "one factor among several" to be considered in imposing an appropriate sentence under § 3553(a). **Kimbrough v United States**, 552 U.S. 85, 90 (2007). Following consideration of the § 3553(a) factors, the Court's

SENTENCING MEMORANDUM - 11

overarching duty is to impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing, regardless of the Guideline in a particular case. **Pepper v. United States**, 131 S. Ct. 1229, 1242–43 (2011).

One of the ways that the Supreme Court ensures that the Guidelines are truly advisory—and, ergo, constitutional—is to allow a sentencing court to disagree with a Guideline as a matter of policy. **Rita v. United States**, 551 U.S. 338, 351 (2007); see also **Spears v. United States**, 555 U.S. 261, 267 (2009) ("[D]istrict courts are entitled to vary from the crack cocaine Guidelines in a mine-run case where there are no 'particular circumstances' that would otherwise justify a variance from the Guidelines' sentencing range."). Although the majority of the Supreme Court's jurisprudence related to the categorical rejection of sentencing Guidelines focuses on those promulgated by the U.S. Sentencing Commission, the Supreme Court has also intimated that congressionally directed Guidelines are subject to the same policy-based variances. See, e.g., **Vazquez v. United States**, 130 S. Ct. 1135 (2010).

In fact, the Ninth Circuit has explicitly held that the child pornography Guideline suffers from numerous flaws that render it vulnerable to categorical attack. See **United States v. Henderson**, 649 F.3d 955, 962–63 (9th Cir. 2011). In *Henderson*, the Ninth Circuit reviewed the history of the child-pornography Guideline and held that it had been repeatedly ratcheted higher and higher not because of reasoned, researched studies, but as a result of congressional pressure. *Id.* at 960–62.

The Ninth Circuit is not alone in its skepticism of the child pornography Guideline. In February 2013, the U.S. Sentencing Commission released a report to Congress on the Guideline for non-production offenders—i.e., individuals such as Jake Jarvis—that was highly critical of the Guideline's implementation and

SENTENCING MEMORANDUM - 12

**KEN THERRIEN, PLLC**
413 North Second Street
Yakima, WA 98901
(509) 457-5991

effectiveness.  See **U.S. SENT'G COMM'N, REPORT TO THE CONGRESS, FEDERAL CHILD PORNOGRAPHY OFFENSES** (2012).[4]

The Commission has a "statutory duty to consider whether the guidelines are in need of revision in light of feedback from judges as reflected in their sentencing decisions," and was motivated to draft the report because of courts' increasing imposition of below-guideline sentences for offenders sentenced under U.S.S.G. § 2G2.2. *Id.* at 6.

Some of the concerns that the Commission voiced include the fact that the specific offense characteristics in U.S.S.G. § 2G2.2(b) "do not reflect the changes" in the computer and Internet technologies that typical non-production offenders use, such that the existing sentencing scheme in "non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability." *Id.* at ii, 323. The Commission explained that because the enhancements for computer use and type and volume of images (which Jake Jarvis receives) "now apply to most offenders," the Guideline "fail[s] to differentiate among offenders in terms of their culpability." *Id.* at iii, xi; *id.* at 209, 323. The Commission further explained that "technological changes have resulted in exponential increases in the volume and ready accessibility of child pornography, including many graphic sexual images involving very young victims, a genre of child pornography that previously was not widely circulated." *Id*. at 6.

---

[4] A copy of the report is available at http://www.ussc.gov/news/congressional-testimony-and-reports/sex-offense-topics/report-congress-federal-child-pornography-offenses

SENTENCING MEMORANDUM - 13

**KEN THERRIEN, PLLC**
413 North Second Street
Yakima, WA 98901
(509) 457-5991

The Commission reported that "not all child pornography offenders are pedophiles or engage in other sex offending." *Id.* at 104. Approximately one in three offenders sentenced under § 2G2.2 "have engaged in" what the Commission deems "sexually dangerous behavior," criminal or non-criminal, past or present, based on allegations in PSRs, arrests, and convictions. *Id.* at ix-x, 204–05. However, "the current guideline measures for offender culpability (e.g., for distribution of child pornography, number of images possessed, possession of sado-masochistic images) are generally not associated with significantly higher rates of [criminal sexually dangerous behavior]." *Id.* at 204.

In short, because "sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders," *id.* at xi, the "current guideline does not adequately distinguish among offenders regarding their culpability for their collecting behaviors," *id.* at 323. The cumulative enhancements addressing the content and volume of images possessed, "in addition to base offense levels of 18 or 22, result [] in guideline ranges that are overly severe for some offenders in view of the nature of their collecting behavior." *Id.*

And, after this exhaustive review, the Commission ultimately concluded that "[t]he current sentencing scheme in § 2G2.2 places a disproportionate emphasis on outdated measures of culpability regarding offenders' collecting behavior and insufficient emphases on offenders' community involvement and sexual dangerousness." *Id.* at xx; 321.

## VII. **Conclusion**

Based on the information provided in this report and the Mitigation Report in support of this memorandum. Lorenzo Mendez respectfully submits a One-

SENTENCING MEMORANDUM - 14

**KEN THERRIEN, PLLC**
413 North Second Street
Yakima, WA 98901
(509) 457-5991

Hundred Eighty (180) month sentence to be followed by five years of supervised release is appropriate in this case. The proposed sentence reflects 18 U.S.C. § 3553(a), and treats the child-pornography Guideline with the skepticism that it deserves in light of empirical research and Lorenzo Mendez' actual offense conduct.

Dated this 20th day of December, 2019.

Respectfully submitted by:

/s/Ken Therrien
KEN THERRIEN, WSBA #20291
Attorney for Lorenzo Elias Mendez
413 NORTH SECOND STREET
Yakima, WA  98901
(509) 457-5991
Fax: (509) 457-6197

SENTENCING MEMORANDUM - 15

KEN THERRIEN, PLLC
413 North Second Street
Yakima, WA 98901
(509) 457-5991

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury of the laws of the State of Washington that on December 20, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send electronic notification of such filing to:

- ALISON GREGOIRE, Assistant United States Attorney
- THOMAS J. HANLON, Assistant United States Attorney
- CARRIE VALENCIA, United States Probation Officer.

*/s/ Ken Therrien*
KEN THERRIEN, WSBA #20291
Attorney for Lorenzo Elias Mendez
413 NORTH SECOND STREET
Yakima, WA  98901
(509) 457-5991
Fax: (509) 457-6197
kentherrien@msn.com

SENTENCING MEMORANDUM - 16

**KEN THERRIEN, PLLC**
413 North Second Street
Yakima, WA 98901
(509) 457-5991