1

1          IN THE UNITED STATES DISTRICT COURT
        IN AND FOR THE EASTERN DISTRICT OF WASHINGTON
2
------------------------------
3                                )
UNITED STATES OF AMERICA,        )
4                                )
                Plaintiff,       )   NO. 1:18-CR-2037-SMJ-1
5                                )
           -vs-                  )
6                                )
LORENZO ELIAS MENDEZ,            )
7                                )   August 2, 2019
                Defendant.       )   Yakima, Washington
8 ------------------------------

9

10          VERBATIM REPORT OF PROCEEDINGS
          PRETRIAL CONFERENCE/MOTION HEARING
11
        BEFORE THE HONORABLE SALVADOR MENDOZA, JR.
12             UNITED STATES DISTRICT JUDGE

13   APPEARANCES:

14   FOR THE PLAINTIFF:        ALISON L. GREGOIRE
                               Assistant U.S. Attorney
15                             P. O. Box 1494
                               Spokane, WA 99210
16

17   FOR THE DEFENDANT:        KENNETH D. THERRIEN
                               Attorney at Law
18                             413 N. Second St.
                               Yakima, WA 98901
19

20

21   REPORTED BY:             Lynette Walters, RPR, CRR, CCR
                              Official Court Reporter
22                            P. O. Box 845
                              Yakima, WA  98907
23                            (509) 573-6613

24   Proceedings reported by mechanical stenography; transcript
produced by computer-aided transcription.
25

2

1                          I N D E X

2                                              Page

3          Government's Motion for Order to
           Destroy Evidence                     6
4               Court's Ruling                  9

5          Defendant's Motion Prohibiting
           Government from Introducing
6          Exhibit 70                          10
                Court's Ruling                 12
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1          (AUGUST 2, 2019, 11:14 A.M.)

2              THE CLERK:  Matter before the court is United States

3      versus Lorenzo Elias Mendez, Cause No. 1:18-CR-2037-SMJ-1.  Time

4      set for pretrial conference/motion hearing.

5              Counsel, please state your presence for the court and

6      record.

7              MS. GREGOIRE:  Good morning, Your Honor, Alison

8      Gregoire for the United States.  And Troy Ribail with the FBI is

9      also at counsel table.

10              THE COURT:  Good morning.

11              MR. THERRIEN:  Good morning, Your Honor.  Ken Therrien

12      for Lorenzo Mendez.

13              THE COURT:  Good morning.

14              MR. THERRIEN:  And also present is Abel Campos.

15              THE COURT:  Good morning.

16              Counsel, as I understand, there are two outstanding

17      motions that, really, the court intends to hear some argument

18      on, the first having to do with the government's motion to

19      destroy certain images that were in possession of the defense.

20      And the second has to do with the defense motion to exclude

21      Exhibit 70, video images.

22              After we go over those, we'll get into the pretrial,

23      final pretrial matters, including procedures for trial,

24      et cetera.

25              Anything else that the parties would like to address?

4

1        MS. GREGOIRE:  Your Honor, the government just had a

2   couple things it wanted to bring to the court's attention as to

3   anticipated exhibits, and foundation for those.  But I think

4   that would fall into the very last category the court mentioned.

5        THE COURT:  Okay.

6        MR. THERRIEN:  Judge, the defense just has just one

7   issue.  We're -- we want to know -- we're continuing to receive

8   discovery from the -- or reports from the government, or

9   discovery.  We were just kind of -- you know, is there going to

10  be a time when we have everything, so -- or is this going to be

11  a continuous process?

12        THE COURT:  Well, couple of things.  I don't know what

13  kind of discovery that is.  Each party has a continuing

14  obligation to provide discovery as it receives it.  I don't know

15  the nature of that discovery, so I guess I'll hear from the

16  government.

17        MS. GREGOIRE:  Thank you, Your Honor.  The defense

18  will continue to receive discovery.  The United States has

19  witness prep interviews set.  Those typically produce, although

20  not always, they produce some *Jencks* material which will be

21  provided to the defense.

22        Additionally, when the United States receives things

23  like defense counsel's expert report, that generates additional

24  investigation, which, in turn, generates additional discovery.

25        So what defense counsel is indicating is true.  There

5

1    have been some responses received, and those have been provided

2    to the defense.  The defense is receiving those nearly in real

3    time with the United States.  There's been virtually no lag time

4    in terms of when the government is receiving that information

5    and when the defense is.  But it is true that there has been

6    ongoing discovery.

7              THE COURT:  And I assume, then, that's the nature of

8    the discovery that's been produced, Mr. Therrien, or is there

9    other things that you are referring to?

10             MR. THERRIEN:  Well, Your Honor, the problem is I just

11   haven't been able to go through it as it's coming in, so I

12   really don't know what I have that -- we received some

13   discovery, was it yesterday or the day before?  I was away for a

14   week, so when I was coming back, we had some issues I had to

15   deal with.  So, you know, really, right now, I don't know all of

16   what I have.

17             I've had the ability to review some of the discovery

18   from the government.  It looks like it's cameras, or, you know,

19   it has to do with forensic -- maybe introduction of this type of

20   evidence at the trial.  I think there's probably 200 pages that

21   I have to read on something else, but I don't know what that is

22   yet.

23             So considering my other schedule, my calendar for

24   other courts, I'm just trying to get a better understanding of,

25   you know, what I can expect.  I do anticipate that I'll be

1  reviewing that -- those items, that discovery, later today and

2  tomorrow.  But, in addition, I'll be preparing for trial

3  tomorrow for this case.

4            THE COURT:  Then if there are substantive issues that

5  you'd like to bring up to the court, you could certainly, you

6  know, raise the appropriate motion.

7            MR. THERRIEN:  Okay.

8            THE COURT:  Based on what I'm hearing today, it sounds

9  like, again, the government, as does the defense, has a

10  continuing obligation to produce discovery as they receive it.

11            So let's go forward, then, with the other two issues,

12  which is, first, the government's motion regarding the

13  destruction of some images that were and are in possession of

14  the defense.  And, Ms. Gregoire, as I understand from their

15  response, this is something that they received -- they had

16  indicated that they had spoken to the special agents, who

17  allowed them to take those out, that that's what their response

18  was.  So what's going on?

19            MS. GREGOIRE:  Yes, Your Honor.  And I understood that

20  that was the case.

21            Incidentally, in response to the response, the exhibit

22  number that Mr. Karstetter, the defense expert, says contains no

23  child pornography is the full Cellebrite extraction of the

24  phone, which would contain thumbnail images from the phone,

25  which does contain images where the putative victim has nothing

GOVT'S MOTION - DESTROY EVIDENCE                                    7

1    on the lower half of her body, and it does contain full chest

2    shots, where the victim, putative victim, is topless.

3            And I do understand, having spoken to Special Agent

4    McEuen -- and, incidentally, this is also a case where Special

5    Agent McEuen is not in charge of these types of forensic

6    reviews.  Forensic Examiner Cory Pritchard was out of town when

7    this evidence was being conducted.  The government was making

8    this evidence readily available to defense expert, and perhaps

9    should not have done so, because it's clear that the typical

10   procedures were not observed.

11           But it is absolutely true that Special Agent McEuen

12   says their expert asked me, do any of these actually meet the

13   standard for child pornography.  And in applying the federal

14   standard, which, as the court no doubt noted, is entirely the

15   subject of the government's trial brief, those images -- that's

16   why this case is charged as attempt, because we don't have

17   lascivious exhibition of the genitals.  And topless images

18   qualify as child pornography on the state side, they don't

19   qualify as child pornography on the federal side, which is why

20   this is charged as an attempt case.  So Special Agent McEuen

21   replied, no, they don't.

22           When I spoke to Mr. Therrien, I said I understand that

23   there may have been some confusion.  But to the extent that

24   these images of a recognizable minor who is undressed exist

25   outside of our office, I have to get them back.  They have to be

GOVT'S MOTION - DESTROY EVIDENCE                              8

1    destroyed, regardless.

2            So to the extent that it's our fault, absolutely, I

3    will accept that, no problem.  They have to be destroyed.  It

4    was my understanding that they would be destroyed until

5    Mr. Karstetter indicated that he felt that would be tantamount

6    to an admission as to their contraband nature, and, therefore,

7    refused to destroy them.

8            And, Your Honor, the government is very concerned.

9    This is a forensic expert who is, at this point, not employed in

10   a law enforcement capacity.  The government does not know

11   anything about the security measures employed at his lab.  He

12   could have his car broken into and have his hard drive taken,

13   Your Honor.  So the government has an obligation to protect

14   these images from future dissemination.  And that's the concern.

15           THE COURT:  Mr. Therrien, why does your expert still

16   need those?

17           MR. THERRIEN:  Your Honor, Mr. Karstetter -- the

18   concern we had was the government is saying you've got this in

19   violation of a stipulation, and I've never had that situation

20   before.  In fact, for as long as I've done this, I've never had

21   to deal with a situation where discovery was provided in a case,

22   and -- by the government, and then the government says, well,

23   they shouldn't have had that.  So I was trying to feel my way

24   through this thing.

25           THE COURT:  Well, but this is different, and the

1    nature of this discovery is different, isn't it?

2           MR. THERRIEN:  Well, yeah.  And I'm not -- what I

3    tried -- and I think what it was is I was unclear, and maybe

4    that's my fault, what the government wanted.  I thought they

5    just wanted those two -- at the beginning, those two images that

6    they complained about destroyed.  And maybe it's not the

7    government's fault.  Maybe it's my misunderstanding of our

8    conversations.  But I thought that we could -- that was it.

9           But when I was informed by Ms. Gregoire that was not

10   it, I raised those concerns.  So I approached her with a

11   stipulation saying, listen, what if we just stipulate that we'll

12   keep this, and destroy it at the end.  And it wasn't saying

13   we're not going to destroy that evidence.  I was just trying to

14   talk to the government about maybe a resolution of this issue.

15          If the government said no, that's not going to work,

16   which they have, then the decision would have been to talk to my

17   client and to Mr. Karstetter and say, listen, the government is

18   going to -- the court is going to rule on this, and the court is

19   going to -- if the court grants the motion, then you'll have to

20   destroy that evidence.

21          We can agree to destroy it subject to some sort of

22   stipulation that, you know, we didn't -- you know, this is how

23   we received it, so we weren't in violation of any kind of --

24          THE COURT:  I understand what you're saying.  So the

25   court is going to grant the motion, but clarify in its order

1  that, of course -- and the court doesn't believe at all that the

2  defense did anything improper in this case.  In fact, they

3  received statements and/or communications from the special agent

4  saying they could have that information.  That agent made a

5  mistake.  That should not have happened.  So those images and

6  that information needs to be destroyed immediately.

7          MR. THERRIEN:  It will be.

8          THE COURT:  Okay.  All right.

9          MR. THERRIEN:  I'll notify Mr. Karstetter.

10         THE COURT:  Let's move on to the next issue.  And the

11 court will issue an order consistent with that.

12         The next motion is defense motion to exclude video

13 Exhibit 70.  So, Mr. Therrien, this is your motion.

14         MR. THERRIEN:  Your Honor, this is one of those

15 motions where I really didn't know whether -- I was struggling

16 if I should wait to the time of trial to see how these issues

17 fleshed out in terms of testimony, or whether I should bring it

18 to the court's attention if we were going to make a motion

19 regarding their entry.

20         THE COURT:  To be quite honest, Mr. Therrien, I'm not

21 sure what the basis is for your motion to exclude.  Why are you

22 saying that --

23         MR. THERRIEN:  I'm saying that it's not the best

24 evidence.  It's a recording of a recording, and it's not even a

25 recording of a recording, it's a selective recording of a

1    recording of -- it's my understanding, when I reviewed this

2    video at the Yakima office, that this was -- the videos that I

3    was watching were 105 seconds long, but they were a compilation,

4    as the government puts it, of three longer videos.  So you can

5    see Ms. Hernandez scrolling through this video, and stopping,

6    and recording something, and then she goes on to another video.

7            So it's really -- I don't really have the ability to

8    cross-examine that information based upon what was actually in

9    those videos.  Because even if they say, well, you know, we're

10   the bad guys, and we destroyed the original, which I disagree,

11   the -- there's no way for me to deal with that other than --

12   because I don't know what --

13           THE COURT:  But you're not challenging, necessarily --

14   I mean, you're --

15           MR. THERRIEN:  I'm saying it's not an original

16   recording.  I mean, I filed my motions, and then the government

17   responded.  And I read their response, and they make some good

18   points, but, you know, but --

19           THE COURT:  I agree with you.

20           MR. THERRIEN:  But, you know, I mean, the thing is

21   it's not -- the original video is -- it's not the original, it's

22   not the original of the recording.

23           THE COURT:  But that's not what the standard is.  I

24   mean, is it what it's purported to be?  It is.  So I don't

25   understand what the objection is.

DEFENDANT'S MOTION - VIDEO EXHIBIT 70                12
COURT'S RULING

1          MR. THERRIEN:  I guess the objection is how do I
2    prove -- I have no ability to cross-examine the introduction, or
3    the person who's introducing that, because I don't have the full
4    videos.
5          THE COURT:  You can certainly examine the witness as
6    she testifies about what she did, can't you --
7          MR. THERRIEN:  Yes, I can.
8          THE COURT:  -- and whether or not it was manufactured,
9    or some --
10          MR. THERRIEN:  Right.  I guess we're talking about
11    going to the weight, and not to the admissibility of it.
12          THE COURT:  Correct.
13          MR. THERRIEN:  And I thought about that.  But I
14    just -- it's an important piece of evidence in the government's
15    case, and in Mr. Mendez's case.  So I just didn't feel that --
16          THE COURT:  I understand why you objected to it.
17          MR. THERRIEN:  -- why we shouldn't try to be heard on
18    this.
19          THE COURT:  I appreciate the objection.  The court is
20    going to deny that motion.  The defense has the ability to
21    cross-examine the witness as she testifies about this
22    particular -- her actions in recording that.  Again, it will
23    really go the weight of that particular evidence.  So the court
24    is going to deny that motion.
25          Now, getting now to our standard of pretrial issues

1    that we typically address, I just want to be clear, the parties

2    are representing that they are ready to go to trial, and right

3    now we're slated to go to trial on the 12th of August.  And the

4    reason I ask that question is I have a two-week trial that I

5    currently have set, with dozens and dozens of witnesses on a

6    civil case.  So you all are telling me that you are ready to go

7    to trial on that date; is that correct, counsel?

8              MS. GREGOIRE:  Yes, Your Honor.

9              MR. THERRIEN:  Yes, Your Honor.

10             THE COURT:  Okay.  I'm going to then cancel that other

11   trial, relying on the parties' indications today.

12             Next, as I understand it, the parties have indicated

13   before that they intended this to be, was it a six-day trial, or

14   a five-day trial?

15             MS. GREGOIRE:  Six, Your Honor.

16             THE COURT:  It's a six-day trial.

17             MS. GREGOIRE:  That leads to the point I wanted to

18   bring up to the court if the court has time for that now.

19             THE COURT:  Sure.

20             MS. GREGOIRE:  Your Honor, including the pictures of

21   the evidence, the government would have, in terms of every

22   single page, every click to go through, well over 400 exhibits.

23   That said, the government actually only has about 66 exhibits.

24   It's just a matter of that the physical evidence was then

25   photographed as against other evidence, et cetera.  So it would

14

1    be the same camera, but now the camera is laid up against a

2    ruler, for example --

3              THE COURT:  Right.

4              MS. GREGOIRE:  -- that sort of thing.  So in order --

5    I was wondering if, in order to abbreviate it, if I could get --

6    the sort of slides that I intend to put in through our forensic

7    expert, and through Special Agent McEuen, who did the physical

8    evidence layout, have been previously given to Mr. Therrien.  If

9    I could get the objections to those in advance of trial, I think

10   that would greatly expedite things.

11             And, then, I also was intending to, at the time I move

12   in the physical evidence, move in the pictures of the physical

13   evidence at the same time.

14             THE COURT:  Mr. Therrien?

15             MR. THERRIEN:  Regarding --

16             THE COURT:  What's your position?

17             MR. THERRIEN:  Regarding the government's presentation

18   of that?

19             THE COURT:  Yes.

20             MR. THERRIEN:  I --

21             THE COURT:  Go ahead.

22             MR. THERRIEN:  Well, I'd like to hear that again so I

23   can --

24             THE COURT:  Okay.

25             MR. THERRIEN:  That was pretty fast.

15

1          THE COURT:  Counsel, it's my understanding that the

2    request is to get the defense's objections to those exhibits

3    that they have, and that way it will speed up the process.  If

4    there are any stipulations, I think that would also speed up the

5    process.

6          MR. THERRIEN:  By tomorrow?

7          THE COURT:  No.  But, again, ahead of the trial.  Is

8    that something that you could do?

9          MR. THERRIEN:  I could do that.

10          THE COURT:  You're not obligated to do that.  I want

11    to be very clear on that.  But it will speed up the process.

12          THE DEFENDANT:  Ken, could I speak with you?

13          MR. THERRIEN:  Sure.

14      (PAUSE)

15          MR. THERRIEN:  Well, the -- I haven't seen the

16    evidence yet, so I don't know.

17          THE COURT:  The exhibits?

18          MR. THERRIEN:  I mean the exhibits.  It -- no, I've

19    seen the exhibits.

20          THE COURT:  Okay.

21          MR. THERRIEN:  So I don't have a problem with the

22    exhibits.

23          THE COURT:  Okay.  So is there a stipulation to those

24    exhibits?

25          MR. THERRIEN:  No.  No, I'm not stipulating to the

16

1    exhibits.  I want to look at them.  I didn't -- I wasn't
2    stipulating to them until I've --
3              THE COURT:  Okay.
4              MR. THERRIEN:  -- viewed them.
5              THE COURT:  All right.  And there are no objections to
6    them at this point?
7              MR. THERRIEN:  Not at this time.
8              THE COURT:  You're saying there's no objections to
9    them?
10             MR. THERRIEN:  Not at this time.  I just -- I'd just
11   like to review them.
12             THE COURT:  Okay.  Counsel, does that answer your
13   question?
14             MS. GREGOIRE:  Yes.  Yes, Judge.
15             THE COURT:  Okay.  All right.
16             Then let's go on to the next issues.  The court has
17   previously provided the proposed preliminary jury instructions
18   and cautionary jury instructions.  Have the parties had an
19   opportunity to review those, and are there any objections to
20   those?
21             MS. GREGOIRE:  The United States has no objections.
22             MR. THERRIEN:  I have no -- defense has no objections.
23             THE COURT:  Okay.  Very well.  Thank you.
24             After we start trial, the court is going to file the
25   proposed final jury instructions.  And I'd like to do that as we

17

1    go forward, and I don't want to wait until the last second.

2    That way you all can be reviewing those jury instructions as we

3    go, and we'll add to them, depending on how the trial goes.  But

4    I'll try to get those filed during the course of trial.

5           The court has made a number of rulings in this case,

6    so I'm going to expect that the parties instruct your witnesses

7    about any applicable pretrial rulings.  I just don't want any

8    mistakes and/or problems with those orders, because often that

9    could lead to mistrials.

10          The government is requesting 30 minutes for opening,

11   and the defense is requesting the same.  Is that my

12   understanding?

13          MS. GREGOIRE:  Yes, Your Honor.

14          MR. THERRIEN:  Yes, Your Honor.

15          THE COURT:  Okay.  I will set aside that time for

16   those openings statements.

17          The government requested closing arguments of 60

18   minutes, at least, up to 90 minutes.  That's an awful long time.

19   Defense only requested 30.  Whatever I give to the government,

20   I'm going to give to the defense.  But I was thinking that's

21   certainly a long time.  Do you need an hour and a half?

22          MS. GREGOIRE:  Your Honor, that was to include

23   rebuttal --

24          THE COURT:  Right.

25          MS. GREGOIRE:  -- obviously.

1        And, honestly, it would depend on -- the government

2   believes it could cover the elements fairly quickly.  It would

3   depend on how robust the defense's case is in terms of how

4   technical the government's response is going to be.  Quite

5   honestly, we expect it to be quite technical, and it will take a

6   bit of time to explain that.  The government does anticipate,

7   between closing argument and rebuttal, needing 60 minutes.

8        THE COURT:  Okay.  Well, then, we'll set aside 60

9   minutes.  You can count on that amount of time.  Defense only

10  requested 30, but you have 60 minutes if you wish to use that

11  amount of time as well.

12       MR. THERRIEN:  Thank you, Your Honor.

13       THE COURT:  I sent out a letter that spelled out the

14  court's procedure.  Do you have any questions about the court's

15  trial procedure?

16       MS. GREGOIRE:  No, Your Honor.

17       MR. THERRIEN:  No, Your Honor.

18       THE COURT:  I do want to note that on Friday -- one of

19  the things that I think the letter indicated, and I think by

20  mistake, is that we indicate that if the trial goes beyond two

21  weeks, the court will finish at, I want to say, 2:00 on that

22  Friday.  The court intended to say if it extends by -- you know,

23  if it extends to the second week.  In other words, that if it

24  goes beyond the first five days, the court, on Friday, sort of

25  closes shop early.

1            And I do that for a number of reasons.  That gives the

2    jurors, who are dedicating a lot of their time, an opportunity

3    to get their affairs in order, or to travel home if they need

4    to travel home.  As you all know, they could be living in

5    Walla Walla and serving for a trial here, or another corner of

6    the district.  So the court intends, on Friday, to end at 3:00

7    any testimony.  And I'd hope that we can have that accomplished.

8    I know that might screw up some of your scheduling, but I think

9    that's beneficial for the jurors.  I really do.

10            So the court intends to do that.  I'll provide

11   additional information as we get closer, and we'll work with

12   counsel to see what works with your respective schedules, but

13   that's at least initially what the court intends to do.

14            As a reminder, the court will not have any sidebars in

15   this case.  Any issues need to be addressed with the court in

16   the morning.  I expect counsel to be present in the court at

17   8:00 in the morning to address any of those anticipated issues.

18   We will address those at that time.  Also, I expect counsel to

19   be present at 1:00 in the afternoon.

20            We will start promptly with testimony at 8:30 and at

21   1:30.  And please have your witnesses prepared.  If you

22   anticipate any issues, inform the court so that we can make

23   those accommodations.

24            And I just wanted clarification, Mr. Therrien.  Is the

25   defendant waiving his presence at those sidebars that we have?

1    The only time we actually do have any sidebars are during

2    voir dire.  We often do that because I don't want to have to

3    remove all the jurors out of the courtroom.

4              MR. THERRIEN:  He would not be waiving his presence.

5              THE COURT:  Okay.

6              If you do have any stipulations after reviewing those

7    exhibits, counsel, there are any stipulations, you must file

8    them by August the 7th.

9              Do either party have any idea as to whether you will

10   be seeking a jury determination on the issue of forfeiture?

11             MS. GREGOIRE:  Yes.

12             MR. THERRIEN:  We would be challenging the seizure of

13   the stuff, Your Honor.

14             THE COURT:  Thank you.

15             And, let's see.  On August 7th, the parties can each

16   pick up the jury questionnaires.  You can pick them up here,

17   here in the courthouse.

18             We'll have a final final pretrial on the morning of

19   trial at 8:30.  If there are any last-minute things that happen

20   between now and then, please be prepared to address them at that

21   time.  You may have nothing, but I always make myself available

22   for any last-minute issues.  We will start promptly at 9:00 with

23   the selection of the jury.

24             Any other pending matters that need to be resolved

25   today?

1          MS. GREGOIRE:  I think that -- Your Honor, I think I

2    typically put this in the trial brief.  I'm not sure if I did.

3    The minor age victim, her first name is Eva.  Rather than go by

4    her initials -- her last name is not the same as her mother's

5    last name.  It will be far easier for all of our witnesses to

6    just call her by first name only, rather refer to her by a

7    pseudonym, or refer to her by initials.  And government's

8    understanding is she's comfortable with that procedure, if the

9    court is amenable to that.

10          MR. THERRIEN:  I have no objection.

11          THE COURT:  And that's fine.

12          Anything else?

13          MR. THERRIEN:  Judge, I just have a question.

14          THE COURT:  Sure.

15          MR. THERRIEN:  On the voir dire regarding the

16    jurors -- regarding the nature of this case, are we going to

17    have any -- is the court intending giving information to the

18    jury about --

19          THE COURT:  I see what you mean.  Typically on, quote,

20    unquote, sex cases, we have an additional questionnaire.

21    Counsel, this is not that kind of a case, I don't think.  I

22    typically do those on rape cases, on child molestation cases,

23    on -- again, that's the additional questionnaire that I do

24    submit to the jury on the day of.  But I'm open to hearing from

25    you on this.

1          MR. THERRIEN:  I just think, because of the nature of

2     the allegations are the attempted production of child

3     pornography, when people hear child pornography, I think that

4     raises some issues with people.  You know, you'll instruct them

5     that Mr. Mendez is presumed innocent, and the indictment is not,

6     you know, evidence.  But considering the inflammatory nature of

7     the charges, just child pornography, people -- people are going

8     to be envisioning small children, the classic -- I don't know if

9     there's classic child pornography.  But that's the kind of child

10    pornography I think that they would misconstrue.  So in this

11    instance, it's not Mr. Mendez visiting a website and viewing

12    nude bodies --

13          THE COURT:  Right.

14          MR. THERRIEN:  -- it's a secret videoing of an

15    underage female.  So I don't know -- I mean, I'm just a little

16    bit concerned that when they hear that charge, they're already

17    formulating impressions on the case.  And I think some people

18    would be just -- if we asked them, would say, no, I just

19    couldn't be, I couldn't be fair in this kind of -- just based

20    upon the nature of the charge.

21          THE COURT:  You know, one of the things I do, counsel,

22    is I give them an understanding of the nature of the case at the

23    beginning, during the court's instruction.  If the parties want

24    to get together and put a paragraph together about the nature of

25    the charges, what this case is and is not, you know, I think

23

1    that might address some of your concerns.  Because I agree with

2    you.  I think that they might listen to the charge and think

3    that it's going to be something versus something else.  So I

4    think it might be clarifying for the jurors during voir dire.

5    So the parties are ordered to get together and provide a joint

6    statement that the court would read to the jury when it

7    describes the nature of the case.

8            How long do you need to do that?  Today is Friday.

9            MS. GREGOIRE:  Can you do it today?

10           MR. THERRIEN:  Sure.

11           THE COURT:  Provide it by the close of business today

12   to the court.

13           Okay.  All right.  Anything else, counsel, that we

14   need to address?  That was a good point.  I hadn't thought about

15   that, but that's a good point.

16           MR. THERRIEN:  Regarding your order on destruction of

17   the evidence --

18           THE COURT:  Yes.

19           MR. THERRIEN:  So the court -- and I know -- I'm not

20   telling the court how to do it.  I'm just going to assume you're

21   going to say so we can have some sort of verification that it

22   has been done.  Or I don't know how the court was going to do

23   that.

24           THE COURT:  You can file an indication to the court

25   that it's been done.

24

```
 1              MR. THERRIEN:  Okay.
 2              THE COURT:  Okay.
 3              MR. THERRIEN:  That would be sufficient?
 4              THE COURT:  That would be sufficient.  And I'll put
 5   that in the order.
 6              MR. THERRIEN:  All right.
 7              THE COURT:  I don't need you to stand in front of the
 8   U.S. Attorney's office as you're burning the document or file,
 9   Mr. Therrien.  Unless you want to do that.
10              MR. THERRIEN:  No, that's good, that I don't have to
11   do that.
12              THE COURT:  I'm happy to just take counsel's word on,
13   on that.
14              All right.  Anything else we need to address today?
15              MS. GREGOIRE:  Not from the United States.
16              MR. THERRIEN:  Nothing further.
17              THE COURT:  Thank you for your presentations.  I'm off
18   to a soccer weekend.  So have fun, y'all.
19         (ADJOURNMENT AT 11:50 A.M.)
20
21
22
23
24
25
```

25

REPORTER'S CERTIFICATE

I, LYNETTE WALTERS, Registered Professional Reporter, Certified Realtime Reporter and Certified Court Reporter;

DO HEREBY CERTIFY:

That the foregoing transcript, Pages 1 through 24, contains a full, true, complete and accurate transcription of my shorthand notes of all requested matters held in the foregoing captioned case, including all objections and exceptions made by counsel, rulings by the court, and any and all other matters relevant to this case.

DATED this 12th day of February, 2020.

s/ Lynette Walters
LYNETTE WALTERS, RPR, CRR, CCR
CCR NO. 2230